IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION - LAW

| | |
|---|---|
| AAMCO TRANSMISSIONS, INC. : | |
|     Plaintiff, : | |
| v. : | No.  2:11-cv-04250-RB |
| FRANK WIRTH : | |
|     and : | |
| AUTO CENTER, LLC : | |
|     Defendants. : | |

### PLAINTIFF'S MOTION TO DISMISS
### DEFENDANTS' COUNTERCLAIM

Plaintiff, AAMCO Transmissions, Inc. ("ATI"), by and through its undersigned counsel, hereby moves this Court to dismiss the counterclaim of Defendants.  This motion is based on the attached Memorandum of Law in Support of Plaintiff's Motion to Dismiss Defendants' Counterclaim and the attached proposed order which are incorporated herein by reference as though fully set forth.  In addition, Plaintiff will rely on any oral argument it may present if requested by the Court.

                                                      Respectfully submitted,

9/13/11                                                     /s/William B. Jameson
DATE                                                William B. Jameson, Esquire
                                                        Attorney for Plaintiff
                                                        AAMCO Transmissions, Inc.
                                                        201 Gibraltar Road, Suite 150
                                                        Horsham, PA 19044
                                                        (610) 668-2900

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION - LAW

| | |
|---|---|
| AAMCO TRANSMISSIONS, INC. : | |
|     Plaintiff, : | |
| v. : | No.  2:11-cv-04250-RB |
| FRANK WIRTH : | |
|     and : | |
| AUTO CENTER, LLC : | |
|     Defendants. : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM**

Plaintiff, AAMCO Transmissions, Inc. ("ATI"), by and through its undersigned counsel, hereby sets forth this Memorandum of Law in support of its Motion to Dismiss the Counterclaim of Defendants Frank Wirth ("Wirth") and Auto Center, LLC ("Auto Center"), as follows:

**I.       Procedural History**

On June 30, 2011, ATI filed its Complaint alleging counts against Defendants for trademark infringement, unfair competition, breach of contract and declaratory relief.  On July 21, 2011, ATI filed a Motion for Preliminary Injunction against Defendants seeking injunctive relief to require the Defendants to stop using ATI's AAMCO trademark and to enforce the Franchise Agreement's post termination provisions including the non-compete covenant.  On August 12, 2011, Defendants filed their response to ATI's Preliminary Injunction Motion.  A preliminary injunction hearing is currently scheduled for October 6, 2011.

On August 29, 2011, Defendants filed their Answer, Affirmative Defenses and Counterclaim.  In response, the instant motion has been filed seeking to have Defendants' Counterclaim dismissed for failure to state a claim upon which relief can be granted.

II.     **Facts**

    A.     **Defendants' Fraud Claim**

On or about February 6, 2008, ATI and Defendants entered into the Franchise Agreement; a writing which, as Defendants acknowledge, speaks for itself and is attached to ATI's Complaint at Exhibit "A". (Defendants' Answer ¶ 13 and Counterclaim, ¶ 85) Prior to and after entering into the Franchise Agreement, ATI allegedly made continuing representations to Defendants about its franchise system, which Defendants claim they relied upon when they elected to become a franchisee as well as after they had commenced their business relationship with ATI. (Counterclaim, ¶¶ 86-92, 131) Specifically Defendants claim that ATI promised them that if they followed ATI's business model, they would achieve "more profits" and maintain labor and parts costs at "20% of gross receipts". (*Id*., ¶¶ 88-91) Defendants allege that these promises were not true and that ATI knew or should have known that they were not true. (*Id*., ¶ 99)

The Franchise Agreement contains an integration clause at section 29 entitled "Entire Agreement," which provides as follows:

> This Agreement contains the entire agreement of the parties, and supersedes, cancels, and revokes any and all other agreements between the parties relating to the subject matter of this Agreement. There are no representations, warranties, promises or inducements, either oral or written, except those contained in this Agreement. Except as set forth in section 7.1, this Agreement may be modified only by an agreement in writing signed by the party against whom enforcement of such modification is sought.

(Complaint, Ex. "A") Nowhere in the Franchise Agreement are there any representations to the effect that if Defendants comply with the AAMCO business model as required under the Franchise Agreement, Defendants will be profitable or achieve any specified level of cost

control. (*See* Complaint, Ex. "A")  To the contrary, section 24 of the Franchise Agreement, entitled "Risk of Operations", provides as follows:

> Franchisee acknowledges that there are uncertainties inherent in all business ventures.  Franchisee acknowledges that he has conducted a thorough and independent investigation and, based on that investigation, desires to enter into this Agreement and undertake the business of owning and operating an AAMCO Center. Franchisee agrees and acknowledges that, except as specifically set forth in this Agreement, no representations or warranties, express or implied have been made to Franchisee, either by AAMCO or anyone acting on its behalf or purporting to represent it, including, without limitation any such representations or warranties relating to the prospects for successful operations, the level of business, sales or profits that Franchisee might reasonably expect, the desirability, profitability or expected traffic volume or profit of the Center (whether or not AAMCO assisted Franchisee in the selection of the location of the Center), the costs of equipping or the amount or type of equipment necessary or appropriate to the operation of the Center or as to the quality of any products or services to be sold by Franchisee to its customers. Franchisee acknowledges that all such factors are necessarily dependent upon variables beyond AAMCO's control, including without limitation, the ability, motivation and amount and quality of effort expended by Franchisee.

(Complaint, Ex. "A")

### B.    Defendants' Breach of Contract Claim

Defendants allege that "ATI breached the Franchise Agreement by removing [them] from the national ATI website and Center Locator." (Counterclaim, ¶ 111)  Specifically, Defendants allege that as a result of their failure to pay the ad pool, ATI removed them from the AAMCO website, which includes a Center Locator.  (*Id.*, ¶¶ 106-107)  As Defendants admit in their counterclaim, they did not pay their share of ad pool costs for local advertising as required by "section 11.2(b) of Exhibit A to Plaintiff ATI's Complaint" (Counterclaim, ¶¶ 100-104) which provides that:

> Franchisee acknowledges that, in addition to Yellow Pages advertising, it is mandatory to employ advertising at the local level and to participate in and pay for advertising programs and promotional activities at the local

> level.  Franchisee agrees to share local advertising expenses with other franchisees in the Designated Market Area (DMA) as defined by A.C. Nielsen Company which may change from time-to-time and to execute all local ad pool documents as may be required and approved by AAMCO.

(Complaint, Ex. "A")

Notwithstanding Defendants conclusory claim to the contrary, nowhere in the Franchise Agreement is there any obligation of ATI to include Defendants on its website.  (*See* Complaint, Ex. "A")  To the contrary, the Franchise Agreement provides at section 11.2(e) that:

> *Franchisee agrees that, if Franchisee fails to pay promptly an amount due his…local advertising group or pool, then…AAMCO… shall be entitled to recover the amount due from Franchisee.*  Franchisee acknowledges that all local advertising benefits him and the other franchisees in the local advertising group or pool.  Franchisee acknowledges that despite failure to contribute to his local AAMCO advertising group or pool, local advertising expenditures by such group or pool confer substantial benefits on him, and further acknowledges his responsibility for payment therefore.

(Complaint, Ex. "A" – emphasis supplied.)

Defendants also allege that ATI materially breached the Franchise Agreement by allowing two (2) other AAMCO franchises to be situated within ten (10) miles of their Center.  (Counterclaim, ¶ 116)  Although Defendants generally aver that, under the Franchise Agreement, no other franchisee was to be allowed to situate within a 10 mile radius of their Center (*Id*., ¶ 113), the Franchise Agreement contains no such provision.  (*See* Complaint, Ex. "A")  To the contrary, the Franchise Agreement provides at section 1.2(a) that:

> AAMCO expressly reserves the right to grant additional franchises or establish other Centers in the same Statistical Area.  The number of Centers will be based upon then current motor vehicle registrations and the marketing program of AAMCO, and shall be limited to a maximum of one Center for each 100,000 motor vehicle registrations.  Notwithstanding this motor vehicle registration limit, *Franchisee agrees that he does not have and is not being granted a protected trading area, specifically without limitation, in regard to the placement of other AAMCO Centers*.

(Complaint, Ex. "A" – emphasis supplied)

III.   <u>Argument</u>

    A.   **Legal Standard**

Federal Rule of Civil Procedure 12(b) provides that " a party may assert the following defenses by motion…(6) failure to state a claim upon which relief can be granted". Fed.R.Civ.P. 12(b)(6). A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *Thompson v. U.S. Airways, Inc.*, 717 F.Supp.2d 468 (E.D.Pa. 2010), *citing Conley v. Gibson*, 335 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a court confronted with a motion to dismiss for failure to state a claim must accept as true all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant, legal conclusions receive no such deference, and the court is not bound to accept as true legal conclusions couched as factual allegations. *Boring v. Google, Inc.*, 362 Fed.Appx. 273 (3rd Cir. 2010). A complaint may be dismissed for failure to state a claim when the facts pled and reasonable inferences therefrom are legally insufficient to support the relief sought. *Nelson v. Temple University*, 920 F.Supp. 633 (E.D.Pa. 1996).

    B.   **Defendants' fraud claim (Count III) fails under Pennsylvania law.**

Defendants claim that ATI defrauded them in two (2) ways – i.e., that ATI's alleged continuing misrepresentations induced them to (1) enter into the Franchise Agreement, and (2) continue to operate under the AAMCO business model subsequent to the commencement of their business relationship with ATI. (Counterclaim, ¶ 131) With respect to the former type of fraud, it is barred by Pennsylvania's parol evidence rule. With respect to the latter alleged fraud, it is insufficiently pled and/or barred by Pennsylvania's gist of the action doctrine. *See Cottman Transmission Systems, LLC v. Kershner*, 536 F.Supp.2d 543 (E.D.Pa. 2008).

i. Evidence of Defendants' claim that ATI fraudulently induced them into executing the Franchise Agreement is barred pursuant to Pennsylvania's parol evidence rule.

The Franchise Agreement is a fully integrated contract.  Specifically, Section 29 of the Franchise Agreement, provides as follows:

> This Agreement contains the entire agreement of the parties, and supersedes, cancels, and revokes any and all other agreements between the parties relating to the subject matter of this Agreement.  There are no representations, warranties, promises or inducements, either oral or written, except those contained in this Agreement.  Except as set forth in section 7.1, this Agreement may be modified only by an agreement in writing signed by the party against whom enforcement of such modification is sought.

(Complaint, Ex. "A")  Accordingly, when the Defendants entered into the Franchise Agreement they expressly agreed that they were not relying on any representations other than those in the Franchise Agreement.

Under Pennsylvania's parol evidence rule, parol evidence of prior representations is inadmissible as to a matter covered by the written agreement with an integration clause.[1] *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. 2005).  As the Superior Court in *Hart* reasoned:

> The rationale for this rule of law is that a party cannot justifiably rely upon prior oral representations and then sign a contract containing terms that refute the alleged prior oral representations. [citation omitted] Thus, when prior fraudulent oral misrepresentations are alleged regarding a subject that was specifically dealt with in a written contract, the party alleging such representations must, under the parol evidence rule, also aver that the representations were fraudulently or by accident or mistake omitted from the integrated written contract. [citation omitted] To require less would make a mockery of the parol evidence rule because all a party would have to do to avoid, modify or nullify a contract would be to aver that false representations were "fraudulently" made. [citation omitted]

*Id*.  More recently, the parol evidence rule was applied by this Court in *Cottman Transmission*

---

[1] There is an exception to the parol evidence rule where the parties agreed that the pre-contract representations would be added to the written agreement but they were omitted because of fraud, accident or mistake – i.e., "fraud in the execution." *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. 2005). In the instant case, however, there are no allegations in the Defendants' counterclaim of fraud in the execution.

*Systems, LLC v. Kershner*, 536 F.Supp.2d 543 (E.D.Pa. 2008).  The *Kershner* case involved a fact pattern substantially similar to the instant case.  *Id*.  The District Court in *Kershner* held that Pennsylvania's parol evidence rule prevented the franchisees from relying on extrinsic evidence of information allegedly provided to them during negotiations to establish their claims against the franchisor for fraud in the inducement or negligent misrepresentation.  *Id*. at 552-54.

Pennsylvania's parol evidence rule is well reasoned, clear and on point with respect to this case.  Evidence of Defendants' fraud claim premised on pre-contract representations is barred.  As such, Count III of Defendants' counterclaim should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) .

>   ii.   <u>ATI's alleged post contract representations do not constitute actionable fraud and are otherwise barred under Pennsylvania's gist of the action doctrine</u>.

Defendants' fraud claim rests on the premise that "prior to and subsequent to entering into the Franchise Agreement," ATI allegedly told them that their profits would improve if they adhered to ATI's business model. (Counterclaim ¶ 88)  These statements allegedly induced Defendants to "follow ATI's Business Model practices subsequent to the commencement of the business relationship".  (*Id*. ¶ 131)  Defendants' adherence to ATI's business model, however, was mandated under section 8(h) of the Franchise Agreement which provides that Defendants were required to "operate the Center in accordance with the methods, policies and procedures and techniques included in the Operator's Manual and other training manuals and materials".  (Complaint, Ex. "A").

Accordingly, as a matter of law, Defendants cannot establish fraud against ATI.  Under Pennsylvania law, the elements of fraud include a showing that the resulting injury was proximately caused by the claimant's reasonable reliance on the misrepresentation.  *Hart*, 884

A.2d at 339, n.7. In the instant case, the alleged misrepresentation that induced Defendants' reliance was ATI's alleged promise that if Defendants followed ATI's business model, Defendants would generate "more profits". (Counterclaim ¶ 88) In that Defendants had a pre-existing contractual obligation to follow ATI's business model, there can be no showing that the resulting injury alleged was proximately caused by ATI's misrepresentation – i.e., that Defendants would achieve more profits if they adhered to ATI's business model. As such, Defendants' fraud claim must fail.

Moreover, even if Defendants could otherwise establish a cause of action for fraud in the performance of the contract, which they cannot, Pennsylvania's "gist of the action" doctrine would apply to such a fraud claim. *Kershner,* 536 F.Supp.2d at 554. The gist of the action doctrine precludes plaintiffs from re-casting ordinary breach of contract into tort claims. *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa. Super. 2002). "Where fraud claims are intertwined with breach of contract claims and the duties allegedly breached are created and grounded in the contract itself, the gist of the action is breach of contract." *Hart*, 884 A.2d at 340. Claims of fraud in the performance of a contract are barred under the "gist of the action" doctrine. *Id.* In the instant case, there can be no doubt that Defendants' fraud claim is intertwined with its breach of contract claim and the duties ATI allegedly breached are created and grounded in the contract itself.

Like their pre-contract fraud claim, Defendants' post contract fraud claim must fail as a matter of law. Defendants' post contract fraud claim is insufficiently pled and is otherwise barred under Pennsylvania's "gist of the action" doctrine and must be dismissed.

    **C.**    **Defendants' breach of contract counterclaims (Counts I and II) fail as a matter of law.**

        i.    <u>Under the Franchise Agreement, ATI had no contractual duty to maintain Defendants on its website</u>.

In their counterclaim, Defendants allege that "ATI breached the Franchise Agreement by removing [them] from the national ATI website and Center Locator." (Counterclaim, ¶ 111) In the counterclaim, however, Defendants concede that they had failed in their obligation to timely pay their fair share of Ad Pool costs (*Id*., ¶¶ 100-04), and that ATI's decision to remove them from the AAMCO website was in response to their payment failure (*Id*., ¶¶ 106-07).

Under Pennsylvania law, in order to establish a claim for breach of contract, the claimant must show "a breach of a duty imposed by the contract". *Hart*, 884 A.2d at 332. Defendants' counterclaim however inexplicably ignores the undeniable fact that nowhere in the Franchise Agreement is there any contractual requirement of ATI to list Defendants' Center on its website. Indeed, under the Franchise Agreement, ATI has the right, not the obligation, to maintain a national website and is entitled "to change or terminate the web site in total or in part, as [it] deems appropriate." *Id*. at § 11.3(b). Moreover, even if Defendants could show a contractual duty of ATI to list them on its website – which they cannot – section 11.2 of the Franchise Agreement expressly allows ATI to take action to collect monies owed the Ad Pool which would include suspending the Defendants' listing until they came into compliance with the Ad Pool. Specifically, the Franchise Agreement provides that "Franchisee agrees that, if Franchisee fails to pay promptly an amount due his…local advertising group or pool, then…AAMCO… shall be entitled to recover the amount due from Franchisee." *See* Franchise Agreement at Exhibit "A" of Complaint, § 11.2(e). Defendants' conclusory remarks notwithstanding, ATI's alleged conduct does not plausibly give rise to the entitlement for relief.

Moreover, to the extent the counterclaim may be viewed to contain factual allegations contrary to, or inconsistent with, the terms of the Franchise Agreement, the language of the Franchise Agreement must control.  Defendants concede that the Franchise Agreement is a writing which speaks for itself and that a copy of the Franchise Agreement, which forms the basis of their breach of contract claim, is attached to ATI's Complaint at Exhibit "A".[2] (Defendants' Answer at ¶ 13 and Counterclaim at ¶ 85)   To the extent documents referenced in or made part of the claim contradict the factual allegations in the claim, the documents control for purposes of determining whether the claim plausibly gives rise to the entitlement for relief. *Goldberg v. Indel, Inc.*, 741 F.Supp.2d 618 (D.N.J. 2010) *citing ALA, Inc. v. CCAIR, Inc.*, 29 F3d 855, 859, n.8 (3rd Cir. 1994).  In the instant case, the express language of the Franchise Agreement controls and supersedes any inconsistent allegations in the counterclaim.

Because Defendants' counterclaim fails to allege any facts sufficient to show a breach of the Franchise Agreement by ATI, Counts I and II of Defendants' counterclaim should be dismissed for failure to state a claim upon which relief can be granted.

    ii.    <u>The Franchise Agreement expressly provides that Defendants had no protected trading area with regard to the placement of other AAMCO Centers</u>.

In their counterclaim, Defendants allege that ATI materially breached the Franchise Agreement by allowing two (2) other AAMCO franchises to be situated within ten (10) miles of their Center.  (Counterclaim, ¶ 116.)  The terms of the Franchise Agreement however could not be clearer on this issue. Specifically, the Franchise Agreement provides that "Franchisee agrees that he does not have and is not being granted a protected trading area, specifically without limitation, in regard to the placement of other AAMCO Centers." *See* Franchise Agreement at

---

[2] Under these circumstances, the Court may consider the Franchise Agreement even though it is extraneous to the counterclaim.  *See Warren General Hospital v. Amgen Inc.*, 643 F.3d 77, 82, n.4 (3rd Cir. 2011) (Holding that documents that are integral to or explicitly relied upon in the claim may be considered by the court).

Exhibit "A" of Complaint, § 1.2(a). Notwithstanding the express language of the Franchise Agreement to the contrary, Defendants generally aver in their counterclaim that, under the Franchise Agreement, no other franchisee was to be allowed to situate within a 10 mile radius of their Center. (Counterclaim, ¶ 113.) As a plain reading of the Franchise Agreement makes clear, however, there is simply no such provision in the Franchise Agreement. Under these circumstances, the express language of the Franchise Agreement must control. *See Goldberg*, 741 F.Supp.2d at 624.

Because Defendants' counterclaim fails to allege any facts sufficient to show a breach of the Franchise Agreement, Counts I and II of Defendants' counterclaim should be dismissed for failure to state a claim upon which relief can be granted.

> **D.    Count II of Defendants' Counterclaim must be dismissed because, under Pennsylvania law, there is no independent cause of action for breach of the implied covenant of good faith and fair dealing.**

Count II, a claim for breach of the implied covenant of good faith and fair dealing, is legally insufficient under Fed.R.Civ.P 12(b)(6) because the implied covenant of good faith cannot be the basis of a cause of action separate and independent from a breach of contract claim under Pennsylvania law.

Defendants have alleged, in Count I, breach of contract, and in Count II, breach of the implied duty of good faith and fair dealing. Under Pennsylvania law, a breach of a covenant of good faith is nothing more than a breach of contract claim and does not provide an independent ground for liability. *See JHE, Inc. v. Southeastern Penn. Transport Authority*, 2002 WL 1018941, *5 (Pa.Com.Pl. May 17, 2002) ("[T]he implied covenant of good faith does *not* allow for a claim separate and distinct from a breach of contract claim. Rather, a claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the

covenant does nothing more than imply certain obligations into the contracts itself."). Separate causes of action for breach of contract and for breach of the implied duty of good faith and fair dealing cannot be maintained, even in the alternative. *See Pilips Bros. Elec. Contractors, Inc. v. Sch. Dist. of Phila.*, 2008 Phila. Ct. Com. Pl. LEXIS 86 at *4 (Phila. Ct. Com. Pl. April 9, 2008) ("[A] breach of the covenant of good faith is nothing more than a breach of contract claim and…separate causes of action cannot be maintained for each, even in the alternative.").

As Pennsylvania courts do not recognize an independent claim of this nature, Count II necessarily fails as a matter of law and should be dismissed with prejudice.

## IV. Conclusion

Based on the forgoing arguments and authorities, Plaintiff ATI respectfully requests that this Honorable Court grant its Motion to Dismiss Defendants' Counterclaim and that the Court enter an Order dismissing Defendants' Counterclaim with prejudice.

                                      Respectfully submitted,

9/13/11                                       /s/William B. Jameson
DATE                                    William B. Jameson, Esquire
                                          AAMCO Transmissions, Inc.
                                          201 Gibraltar Road, Suite 150
                                          Horsham, PA  19044
                                          (610) 668-2900

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION - LAW

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC. | : | |
|     Plaintiff, | : | |
|     v. | : | No. 2:11-cv-04250-RB |
| FRANK WIRTH | : | |
|     and | : | |
| AUTO CENTER, LLC | : | |
|     Defendants. | : | |

**CERTIFICATE OF SERVICE**

    William B. Jameson hereby certifies that he did serve on this  13th  day of September, 2011, the attached Plaintiff's Motion to Dismiss Defendants' Counterclaim, upon the Defendants' counsel via U.S. Mail, postage prepaid at the following address:

        Terence P. Ruf, Jr., Esquire
        37 West Gay Street
        West Chester, PA  19380


 9/13/11                                    /s/William B. Jameson
DATE                                   William B. Jameson, Esquire
                                         Attorney for Plaintiff
                                         AAMCO Transmissions, Inc.
                                         201 Gibraltar Road, Suite 150
                                         Horsham, PA 19044
                                         (610) 668-2900